IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

AMY SALVO,                            )
                                      )
                Plaintiff,            )
                                      )
vs.                                   )       Case Number CIV-04-1613-C
                                      )
U.S. SECURITY, INC., an Oklahoma      )
Corporation,                          )
                                      )
                Defendant.            )

## AMENDED MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Enforce Arbitration and to Consolidate All

Cases as Identified Below for the Sole Purpose of This Motion to Enforce.  (Dkt. No. 26.)

Plaintiff, Nina Jennings, argues that the parties entered into a valid contract to arbitrate this

dispute.  Defendant, U.S. Security, Inc., disagrees.  Defendant argues that the parties did not

agree on the style of arbitration – and that the style of arbitration was material.  The Court

finds that the parties entered into a valid and enforceable arbitration agreement.  Thus, this

case is stayed and the parties are compelled to arbitration.

BACKGROUND

In 2002-2004, seven employment discrimination suits were filed in this Court against

U.S. Security, Inc., of which this is one.  (See Dewberry v. U.S. Sec., Inc., Case No.

CIV-02-1185-C; Davis v. U.S. Sec., Inc., Case No. CIV-03-1147-C; Warrior v. U.S. Sec.,

Inc., Case No. CIV-03-1345-M; Holliday v. U.S. Sec., Inc., Case No. CIV-04-1610-C;

Jennings v. U.S. Sec., Inc., Case No. CIV-04-1611-C; Casteel v. U.S. Sec., Inc., Case No.

CIV-04-1612-C; Salvo v. U.S. Sec., Inc., Case No. CIV-04-1613-C.)  After a court-ordered

settlement conference in Dewberry, the parties to all seven cases agreed to submit their cases

to binding arbitration.  In a joint motion filed in Dewberry, counsel for the parties[1] requested

the Court to strike Dewberry's case from the trial docket, which was less than two weeks

away.  (Joint Motion, Case No. CIV-02-1185-C, Dkt. No. 103, ¶ 4.)  Counsel requested

"until March 5, 2004, to negotiate the terms of the arbitration, secure an arbitrator, resolve

the mechanics of an arbitration and report to the Court whether an agreement has been

reached."  (Id. ¶ 3.)  The Court granted the request in part, giving the parties until March 5

to negotiate the proposed arbitration agreement and report whether an agreement had been

reached, but refusing to strike the case from the March docket.   (Order, Case No.

CIV-02-1185-C, Dkt. No. 104.)

On March 5, 2004, counsel for the parties submitted a letter in the Dewberry action

which reads in pertinent part:

> This is to inform you that counsel and their clients have agreed to conduct a
> global binding arbitration and that Reggie N. Whitten will serve as our
> arbitrator. . . .
>> In addition, we have also agreed:
>> 1)    the arbitration will include Kimberly J. Dewberry, Shirley J.
>>       Davis, Terry Casteel, Karen Holliday, Amy Salvo, Sean Warrior
>>       and Nina Jennings;
>> 2)    we will arbitrate each plaintiff/claimant one right after the other
>>       until they are completed;
>> 3)    the arbitration will be straight binding arbitration, high low,
>>       baseball style or a variation of baseball style;

---

[1] Counsel are the same for the parties in all seven cases.

    4)       there will be no further discovery by either party unless it is something like a document which would not be burdensome to produce.

    The remaining details of how arbitration is conducted will be agreed upon by the parties.

(March 5, 2004, Letter, Dkt. No. 114.)  Over the next six weeks, the parties hammered out more details regarding the arbitration.  (See e-mail chain, Def.'s Br. Exh. 2, Case No. CIV-04-1611-C, Dkt. No. 27.)  Ultimately, the parties agreed that "[t]here will be no 'high low' agreement, i.e. no minimum guarantee and no maximum recovery, other than those statutorily imposed by Title VII." (April 19, 2004, Letter from Debra McCormick, Pl.'s Br. Exh. 2; see also April 19, 2004, Letter from Elizabeth R. Castleberry, id.)  According to Defendant's former counsel, Debra McCormick, in an affidavit filed in conjunction with the pending motion, Defendant was agreeable to proceeding without a high/low agreement only because Mr. Whitten was serving as arbitrator.  (McCormick Aff., Def.'s Br. Exh. 3 ¶ 6.)  However, a few days before the arbitration was scheduled to begin, the arbitrator determined that he could not serve in that capacity because of a conflict of interest.  (April 23, 2004, Letter, Pl.'s Br. Exh. 4.)

Over the next six months the parties attempted to reschedule the arbitration with a new arbitrator.  The parties began again discussing proceeding with a high/low style of arbitration. (July 26, 2004, E-mail from Elizabeth Castleberry, Def.'s Exh. 9.)  Once a new arbitrator was selected and the arbitration date set, Defendant's counsel sent a letter to Plaintiff's counsel, indicating that it was now "imperative we meet and agree on a high/low."

(Oct. 15, 2004, Letter from Debra McCormick, Def.'s Exh. 7.)  Although Plaintiff's counsel denied that agreeing on a high/low was a condition of the arbitration contract, they worked with Defendant's counsel in an attempt to reach such an agreement.  (Oct. 20, 2004, Letter from Elizabeth Castleberry, Pl.'s Exh. 10.)  The parties were again unable to reach an agreement.  Defendant's counsel indicated that the parties appeared to be at an impasse and "without a high/low agreement, we cannot proceed with the arbitration and these cases will need to proceed on track in federal court."  (Oct. 26, 2004, Letter from Debra McCormick, Pl.'s Exh. 11.)

<u>DISCUSSION</u>

There is no question that the parties agreed to participate in binding arbitration.  The only issue is whether the terms of that agreement were sufficiently certain for the agreement to be enforceable.  To determine this, the Court looks to Oklahoma contract law.[2]

15 Okla. Stat. § 104 provides "[w]here a contract has but a single object, and such object is . . . so vaguely expressed as to be wholly unascertainable, the entire contract is void."  Voiding a contract because of uncertainty is judicially disfavored.  See <u>Firstul Mortgage Co. v. Osko</u>, 1979 OK CIV APP 61, ¶ 9, 604 P.2d 150,153.  However, the Court

---

[2] Plaintiff has argued that the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., applies to this action.  Under 9 U.S.C. § 4, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  If the FAA were applicable (which is questionable because it only addresses *written* agreements to arbitrate), the Court would still look to the contract principles of the contracting state to determine if a valid agreement to arbitrate exists.  See <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996); <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 513 U.S. 265, 281 (1995).

recognizes that "it is necessary that the parties agree so that a court can determine what each is expected to do in order that the court may determine the existence of a breach and formulate a remedy." Id.

Defendant contends that the agreement to arbitrate was merely an "agreement to agree" and there was no meeting of the minds on the high/low agreement – an essential term of the contract. Defendant urges the Court to adopt the rationale of the Nevada Supreme Court in Roth v. Scott, 921 P.2d 1262 (Nev. 1996). In Roth, the court held that, under a set of facts similar to those presented here, the parties did not enter into a binding arbitration agreement because there was no meeting of the minds on the damages that the arbitrator could award. Roth, 921 P.2d at 1083.

Roth is both distinguishable and unpersuasive. In Roth, the issue was not whether the parties had an arbitration agreement, but rather whether the arbitration would be binding. Roth, 921 P.2d at 1263. One party asserted that he was agreeable to binding arbitration with a high/low agreement. The parties were never able to reach an agreement on high/low caps. Id. Although the parties argued that they discussed the essential terms, the parties could not present any documents evidencing a meeting of the minds on these terms. Id. at 1265. Thus, the Court found that they never reached an agreement to *binding* arbitration. Id. In contrast, the parties in this case agreed to arbitrate their claims using one of four arbitration methods. See discussion infra. Such an agreement is evidenced in a written document signed by both parties, signed in accordance with Fed. R. Civ. P. 11, and filed with this Court. Id. Thus, Roth is factually distinguishable. Further, Roth is unpersuasive in light of the judicial policy

5

favoring arbitration agreements and Oklahoma's policy disfavoring the voidance of a contract for lack of certainty.

Agreements to agree are generally too vague to be enforceable.  See Am. Automated Theatres, Inc. v. Hudgins, Thompson, Ball & Assocs., Inc., 1973 OK CIV APP 15, ¶ 8, 516 P.2d 565, 567.  However, in some cases, agreements to agree to *more specific terms* in the future may be enforceable.  See Sigma Res. Corp. v. Norse Exploration, Inc., 1992 OK CIV APP 160, ¶ 7, 852 P.2d 764, 767.

Defendant's argument is undercut by its own letters and filings before this Court.  In their joint request to strike the trial date, both parties indicated that they were negotiating the terms of a proposed arbitration agreement and would report to the Court "whether an agreement [had] been reached." (Joint Motion, Case No. CIV-02-1185-C, Dkt. No. 103, ¶ 3.) In their next filing, both parties signed a letter representing to this Court that an agreement *had been reached*.  (March 5, 2004, Letter.)  The parties indicated that they had "also *agreed*" that "the arbitration will be straight binding arbitration, high low, baseball style *or* a variation of baseball style." (Id.)  In filing this letter, the parties were representing to the Court that they had agreed on all essential terms and that, to the extent more *specific* terms were to be decided, they would work together in good faith to work those out.  See Sigma Res. Corp., 1992 OK CIV APP 160, ¶ 7, 852 P.2d at 767.  Clearly, the Court relied on those representations when it struck the trial setting and placed the Dewberry case in administrative closure.

The fact that the parties had yet to select one of four "styles" of arbitration does not render the object of the contract void for vagueness. The object of this contract was to submit these cases to global binding arbitration. The *style* of arbitration, if even an essential element, is "reasonably certain" because it "'provide[s] a basis for determining the existence of a breach and for giving an appropriate remedy.'" Firstul Mortgage Co., 1979 OK CIV APP 61, ¶ 9, 604 P.2d at 153 (quoting Restatement (Second) of Contracts § 32 (1973)). Implied by the parties' agreement to one of the four "styles" is the requirement that the parties negotiate in good faith to select the "style" of arbitration. If, after negotiation, the parties are unable to select a "style," the default of straight binding arbitration (a choice clearly anticipated by the parties) would apply.[3] Thus, the Court can determine whether a party is in breach by (1) the party's failure to negotiate or negotiate in good faith and/or (2) the party's insistence on a style other than those previously identified, and the Court could remedy the breach by mandating straight binding arbitration.

This conclusion is consistent with the parties' apparent initial understanding. Although there is much correspondence about the high/low agreements (clearly indicating Defendant's preference for this method), it is not until six months *after* the agreement to arbitrate that agreement on a high/low became a *condition* for the Defendant to participate in arbitration. Notably, at the time of the originally scheduled arbitration, the parties were

---

[3] Straight binding arbitration does not require the parties to agree on limits to the damage awards. In contrast, high/low requires the parties to *agree* to a minimum and maximum award and baseball style requires the parties to submit final binding offers and the arbitrator may choose only one of the offers and cannot "split the baby."

intending to proceed *without* a high/low agreement and instead use straight binding arbitration.[4]   For Defendant to now insist that it was a contemplated term all along is inconsistent with its own actions after the agreement was reached and, even more troublesome, inconsistent with its prior representations to this Court.

CONCLUSION

Because the parties agreed to arbitrate their claims in this case and that agreement is sufficiently certain to be enforced, the Court GRANTS Plaintiff's Motion to Enforce Arbitration Agreement (Dkt. No. 26).   This case shall remain in administrative closure and dismissed as soon as the arbitration is completed.   Counsel shall report the status of the arbitration every sixty days and upon completion.

IT IS SO ORDERED this 4th day of August, 2005, nunc pro tunc June 21, 2005.

ROBIN J. CAUTHRON
United States District Judge

---

[4] Defendant contends that they "waived" their prior insistence for a high/low style arbitration because Mr. Whitten would be serving as an arbitrator.  Thus, Defendant argues that the "condition" was "revived" because Mr. Whitten could not serve in this capacity.  Because the Court has found that the parties never agreed to a high/low style of arbitration as the sole style of arbitration, it can only be "revived" to the extent it is again *one of four* potential styles of arbitration the parties may use.